UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION
_____

ROBERT LOGAN,

                    Plaintiff,                         Case No. 1:21-cv-791

v.                                                     Honorable Ray Kent

MICHIGAN DEPARTMENT OF
CORRECTIONS et al.,

                    Defendants.
_____/

## **OPINION**

        This is a civil rights action brought by a state prisoner under 42 U.S.C. § 1983.

Plaintiff previously sought and was granted leave to proceed *in forma pauperis*.  (ECF No. 4.)

Pursuant to 28 U.S.C. § 636(c) and Rule 73 of the Federal Rules of Civil Procedure, Plaintiff

consented to proceed in all matters in this action under the jurisdiction of a United States magistrate

judge.  (ECF No. 5.)

        Under the Prison Litigation Reform Act, Pub. L. No. 104-134, 110 Stat. 1321

(1996) (PLRA), the Court is required to dismiss any prisoner action brought under federal law if

the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or

seeks monetary relief from a defendant immune from such relief.  28 U.S.C. §§ 1915(e)(2), 1915A;

42 U.S.C. § 1997e(c).  The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v.

Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly

irrational or wholly incredible.  *Denton v. Hernandez*, 504 U.S. 25, 33 (1992).  Applying these

standards, the Court will dismiss Plaintiff's complaint for failure to state a claim.

<u>Discussion</u>

I.      **Factual Allegations**

        Plaintiff is presently incarcerated with the Michigan Department of Corrections (MDOC) at the Ionia Correctional Facility (ICF) in Ionia, Ionia County, Michigan.  The events about which he complains occurred at that facility.  Plaintiff sues the MDOC, MDOC Director Heidi Washington, Assistant Deputy Director Unknown Party #1, CFA Deputy Director Unknown Party #2, Regional Environmental "Sanitarion" Unknown Party #3, ICF Deputy Warden John Davids, and ICF Assistant Deputy Warden Unknown Barber.

        Plaintiff alleges that the events of which he complains occurred in ICF segregation Unit One from March 2, 2021, through August 28, 2021.  (ECF No. 1, PageID.3.)  Plaintiff asserts first that inmates are allowed to enter his cell while he is in the shower.  (*Id.*, PageID.4.)  Plaintiff alleges that there have been several occasions where he has returned to his cell "to find his property and belongings moved or misplaced."  (*Id.*)  Specifically, on August 16, 2021, Plaintiff found his "legal work and mail removed from the manilla envelopes that they were contained in and spread out all on his bed haphazardly."  (*Id.*)  Plaintiff asked staff if anyone had entered his cell while he was in the shower, and they replied, "just the porter."  (*Id.*)  Plaintiff "fears that these porters who are fellow prisoners that are being allowed to enter and encouraged to enter his living area are reading his mail and more."  (*Id.*)  According to Plaintiff, the MDOC and ICF try "to justify this violation by labeling this as 'unit-cell clean-up.'"  (*Id.*)  Plaintiff maintains that Defendants have "put into place or ignored the procedures and customs at ICF that allow other prisoners to invade [his] privacy by allowing other prisoners to enter into his cell unattended."  (*Id.*)

        Plaintiff next asserts that the "cell clean-up" procedure does not comply with MDOC standards.  (*Id.*)  Plaintiff avers that since his placement in unit one he has not been "issued cleaning materials or equipment to clean his living area."  (*Id.*)  Instead, "segregation porters" are

used to clean his living area "without his consent and out of his observation." (*Id.*, PageID.4–5.) Plaintiff "feels that these prisoners have not and are not putting forth the same effort he would to clean his living area." (*Id.*, PageID.5.)  He claims that there are "decades of filth, bodily fluids[,] and other unknown possible biohazardous stains on the walls, floors[,] and the slot attached to the door that his food gets passed through to him three times a day every day." (*Id.*)  Plaintiff has submitted many kites about the issue.  (*Id.*)  On July 14, 2021, Plaintiff sent a kite to Defendant Davids "explain[ing] this issue with all other claims issues." (*Id.*)  He never received a response. (*Id.*)

Plaintiff goes on to claim that on August 5, 2021, he sent a kite to medical about a spider bite he received on August 1, 2021.  (*Id.*)  He also noted that "since being in his assigned cell he has had sore throats, stuffy nose, and been so [disgusted] with the living conditions of his cell to the point of vomiting and not [being] able to eat meals." (*Id.*)  Plaintiff was not seen until August 13, 2021.  (*Id.*)  By that point, "the spider bite had healed and his worries about it gone." (*Id.*)  Plaintiff states there is still a bump where the bite was, but he is not sure whether it is related to the injury.  (*Id.*)  Medical told Plaintiff that there was nothing they could do for spider bites. (*Id.*)   They did not address his other complaints.  (*Id.*)  Plaintiff "feels that the dirtiness of his living area from him not being allowed to clean it properly is causing him to get sick and furthermore attracts insects." (*Id.*)  Plaintiff claims that Defendants have "stood watch and failed to provide [him] with adequate access to cleaning materials and equipment . . . subjecting him to unsanitary living conditions." (*Id.*)

Plaintiff next takes issue with the "metal brackets, bolts[,] and eye hooks attached to every bed slab" in unit one.  (*Id.*)  He claims that these objects "disrupt his sleep and cause neck and back pain." (*Id.*, PageID.6.)  Plaintiff complained to Counselor Simon (not a party), and sent

3

kites to medical and Defendant Davids "all to no avail." (*Id.*)  Plaintiff also submitted a mental health kite "letting mental health know about his dreams of being chained to the metal brackets, bolts[,] and eye hooks and tortured by ICF staff." (*Id.*)  Plaintiff received a response "to his neck and back pain issue telling [him] to '[buy] pain relievers from the store and do rotation and stretching exercises.'" (*Id.*)  Mental health told Plaintiff to practice his breathing exercises. (*Id.*)  Plaintiff "feels these responses were a form of mental abuse and this whole overall ordeal [is] cruel and unusual punishment" because the "metal brackets, bolts[,] and eye hooks are not even being used." (*Id.*)  Plaintiff maintains that Defendants have "stood idle knowing Plaintiff's suffering yet failing to remove or correct improperly mounted restraint brackets, bolts[,] and eye hooks from the Plaintiff's bed slab." (*Id.*)

Finally, Plaintiff alleges that staff at ICF are refusing him his "one hour a day, five days a week, out of cell exercise period." (*Id.*)  When Plaintiff asks why, he is told that he is on loss of privileges (LOP) status or in segregation. (*Id.*)  "Everyday, the Plaintiff stands at his cell door and waits for staff to do yards rounds." (*Id.*)  He claims that most days staff "don't give anyone their out of cell exercise period at all, but when they do, the Plaintiff is denied." (*Id.*)  Plaintiff has spoken to Counselor Simon "once a week, every week about this issue, all to no avail." (*Id.*)  He "[r]eceives no fresh air from the filth of his cell." (*Id.*)  Plaintiff avers that Defendants have "put in place and/or stood by and ignored policies, procedures and customs that have designated and/or [classified] all out of cell exercise period as a privilege and not an essential constitutional right." (*Id.*)

Based on the foregoing, Plaintiff asserts violations of his First, Fourth, Sixth, Eighth, and Fourteenth Amendment rights.  He also asserts state law claims of negligence, intentional infliction of emotional distress, and "intentional interference with another's interest in

solitude or seclusion." (*Id.*, PageID.4.)  Plaintiff seeks declaratory and injunctive relief, as well as compensatory and punitive damages.  (*Id.*, PageID.11–20.)

## II.      Failure To State a Claim

A complaint may be dismissed for failure to state a claim if it fails "to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)).  While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions.  *Twombly*, 550 U.S. at 555; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.").  The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face."  *Twombly*, 550 U.S. at 570.  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Iqbal*, 556 U.S. at 679.  Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully."  *Id.* at 678 (quoting *Twombly*, 550 U.S. at 556).  "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—that the pleader is entitled to relief."  *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470–71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(i)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law.  *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr.*

*Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996).  Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed.  *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

### A.      Claims Against the MDOC

As noted *supra*, Plaintiff names the MDOC as a Defendant in this matter. Regardless of the form of relief requested, the states and their departments are immune under the Eleventh Amendment from suit in the federal courts, unless the state has waived immunity or Congress has expressly abrogated Eleventh Amendment immunity by statute.  *See Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 98–101 (1984); *Alabama v. Pugh*, 438 U.S. 781, 782 (1978); *O'Hara v. Wigginton*, 24 F.3d 823, 826 (6th Cir. 1994).  Congress has not expressly abrogated Eleventh Amendment immunity by statute, *Quern v. Jordan*, 440 U.S. 332, 341 (1979), and the State of Michigan has not consented to civil rights suits in federal court.  *Abick v. Michigan*, 803 F.2d 874, 877 (6th Cir. 1986).  In numerous opinions, the Sixth Circuit has specifically held that the MDOC is absolutely immune from a § 1983 suit under the Eleventh Amendment.  *See, e.g.*, *Harrison v. Michigan*, 722 F.3d 768, 771 (6th Cir. 2013); *Diaz v. Mich. Dep't of Corr.*, 703 F.3d 956, 962 (6th Cir. 2013); *McCoy v. Michigan*, 369 F. App'x 646, 653–54 (6th Cir. 2010).  In addition, the State of Michigan (acting through the MDOC) is not a "person" who may be sued under § 1983 for money damages.  *See Lapides v. Bd. of Regents*, 535 U.S. 613, 617 (2002) (citing *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 66 (1989)); *Harrison*, 722 F.3d at 771.  The Court, therefore, dismisses the MDOC on grounds of immunity.

### B.      Respondeat Superior

Plaintiff explicitly states that he is suing Defendants based upon respondeat superior.  (ECF No. 1, PageID.4–6.)  The only basis he offers for the liability of these Defendants

is that they indirectly supervise the persons who actually actively participated in the unconstitutional conduct of which Plaintiff complains.

Government officials, however, may not be held liable for the unconstitutional conduct of their subordinates under a theory of respondeat superior or vicarious liability. *Iqbal*, 556 U.S. at 676; *Monell v. New York City Dep't of Soc. Servs*., 436 U.S. 658, 691(1978); *Everson v. Leis*, 556 F.3d 484, 495 (6th Cir. 2009). A claimed constitutional violation must be based upon active unconstitutional behavior. *Grinter v. Knight*, 532 F.3d 567, 575–76 (6th Cir. 2008); *Greene v. Barber*, 310 F.3d 889, 899 (6th Cir. 2002). The acts of one's subordinates are not enough, nor can supervisory liability be based upon the mere failure to act. *Grinter*, 532 F.3d at 576; *Greene*, 310 F.3d at 899; *Summers v. Leis*, 368 F.3d 881, 888 (6th Cir. 2004). Moreover, § 1983 liability may not be imposed simply because a supervisor denied an administrative grievance or failed to act based upon information contained in a grievance. *See Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999). "[A] plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Iqbal*, 556 U.S. at 676.

The Sixth Circuit repeatedly has summarized the minimum required to constitute active conduct by a supervisory official:

> "[A] supervisory official's failure to supervise, control or train the offending individual is not actionable *unless* the supervisor either encouraged the specific incident of misconduct or in some other way directly participated in it." *Shehee*, 199 F.3d at 300 (emphasis added) (internal quotation marks omitted). We have interpreted this standard to mean that "at a minimum," the plaintiff must show that the defendant "at least implicitly authorized, approved, or knowingly acquiesced in the unconstitutional conduct of the offending officers."

*Peatross v. City of Memphis*, 818 F.3d 233, 242 (6th Cir. 2016) (quoting *Shehee*, 199 F.3d at 300, and citing *Phillips v. Roane Cnty.*, 534 F.3d 531, 543 (6th Cir. 2008)); *see also Copeland v. Machulis*, 57 F.3d 476, 481 (6th Cir. 1995) (citing *Rizzo v. Goode*, 423 U.S. 362, 375–76 (1976),

and *Bellamy v. Bradley*, 729 F.2d 416, 421 (6th Cir. 1984)); *Walton v. City of Southfield*, 995 F.2d 1331, 1340 (6th Cir. 1993); *Leach v. Shelby Cnty. Sheriff*, 891 F.2d 1241, 1246 (6th Cir. 1989).

Here, Plaintiff fails to allege any facts plausibly showing that Defendants encouraged or condoned the conduct of their subordinates, or authorized, approved, or knowingly acquiesced in the conduct.  At most, Plaintiff avers that he submitted a kite regarding his various issues to Defendant Davids, all to no avail.  Plaintiff, however, cannot hold Defendant Davids liable for simply failing to act in response to his kites.  *See Shehee*, 199 F.3d at 300.  Moreover, Plaintiff does not even allege that he gave the kite to Defendant Davids; instead, he claims he gave the kite to a counselor to give to Defendant Davids.  (Compl., ECF No. 1, PageID.5.)  That is the only fact alleged that might even tenuously support the inference that any of these Defendants were aware of any of the conduct alleged by Plaintiff.

Plaintiff's vague and conclusory allegations of supervisory responsibility are insufficient to demonstrate that Defendants were personally involved in the events described in Plaintiff's complaint.  Conclusory allegations of unconstitutional conduct without specific factual allegations fail to state a claim under § 1983.  *See Iqbal*, 556 U.S. at 678–79; *Twombly*, 550 U.S. at 555.  Because Plaintiff's § 1983 action is premised entirely on respondeat superior liability for the unconstitutional conduct of others, his action fails to state a claim.

C.     **Violations of MDOC Policy**

Even if Plaintiff alleged a more direct connection between the conduct of which he complains and these Defendants, he still fails to state a claim.  Plaintiff contends that Defendants "have put into place or ignored the procedures or customs" at ICF allowing other inmates into Plaintiff's cell.  (ECF No. 1, PageID.4.)  He also suggests that Defendants have failed to follow MDOC Policy Directive 04.03.102, and that they have "ignored policies, procedures[,] and customs that have designated and/or [classified] all out of cell exercise period[s] as a privilege and

8

not an essential constitutional right." (*Id.*, PageID.4, 6.)  Section 1983, however, does not provide redress for a violation of state law.  *Pyles v. Raisor*, 60 F.3d 1211, 1215 (6th Cir. 1995); *Sweeton v. Brown*, 27 F.3d 1162, 1166 (6th Cir. 1994).  The only possible way a policy might enjoy constitutional protection would be through the Fourteenth Amendment's Due Process Clause.

To demonstrate a due process violation, a plaintiff must prove the following elements:  (1) a life, liberty, or property interest requiring protection under the Due Process Clause; and (2) a deprivation of that interest (3) without adequate process.  *Women's Med. Prof'l Corp. v. Baird*, 438 F.3d 595, 611 (6th Cir. 2006).  "Without a protected liberty or property interest, there can be no federal procedural due process claim."  *Experimental Holdings, Inc. v. Farris*, 503 F.3d 514, 519 (6th Cir. 2007) (citing *Bd. of Regents of State Colleges v. Roth*, 408 U.S. 564, 579 (1972)).  Courts, however, have routinely recognized that a prisoner does not enjoy any federal protected liberty or property interest in state procedure.  *See Olim v. Wakinekona*, 461 U.S. 238, 250 (1983); *Laney v. Farley*, 501 F.3d 577, 581 n.2 (6th Cir. 2007); *Brody v. City of Mason*, 250 F.3d 432, 437 (6th Cir. 2001); *Sweeton*, 27 F.3d at 1164.  Plaintiff's vague allegations that Defendants violated MDOC policy, therefore, fail to raise a cognizable federal constitutional claim.

D.  **Claims Related to In-Cell Privacy**

Plaintiff suggests that various constitutional rights have been violated because inmate porters come into his cell for cleaning purposes and move and misplace his belongings. (ECF No. 1, PageID.4.)  Plaintiff suggests this is an invasion of privacy because this occurs when he is in the shower and without his consent.  (*Id.*)

In *Hudson v. Palmer*, 468 U.S. 517 (1984), the Supreme Court considered and rejected a Fourth Amendment claim based upon a prison official searching a prisoner's cell and destroying some of his legal papers in the process.  *Id.* at 519, 535.  The prisoner claimed that the

prison official's conduct constituted an unreasonable search and seizure of his property, in violation of the Fourth Amendment.  *Id.* at 530.  The Court disagreed.

First, the Court recognized that while prisoners are not beyond the reach of the Constitution, "curtailment of certain rights is necessary, as a practical matter, to accommodate a 'myriad of institutional needs and objectives' of prison facilities, . . . chief among which is internal security."  *Id.* at 523–24 (internal citation omitted).  The Court then determined that the official's search of the prisoner's cell did not violate the Fourth Amendment because "society is not prepared to recognize as legitimate any subjective expectation of privacy that a prisoner might have in his prison cell."  *Id.* at 526. According to the Court, "[a] right of privacy in traditional Fourth Amendment terms is fundamentally incompatible with the close and continual surveillance of inmates and their cells required to ensure institutional security and internal order."  *Id.* at 527–28. For similar reasons, the Court held that the Fourth Amendment "does not protect against seizures in a prison cell."  *Id.* at 528 n.8.

Like in *Hudson*, Plaintiff simply has no expectation of or right to privacy in his prison cell.  The Court, therefore, will dismiss Plaintiff's claims asserting that Defendants' actions violated such a right.

### E.     Claims Related to Legal Mail

Plaintiff's scattershot complaint also suggests that his First, Fourth, Sixth, Eighth, and Fourteenth Amendment rights were violated on August 16, 2021, when he came back to his cell to find his legal mail and work had been removed from the manilla envelopes and strewn across his bunk.  (ECF No. 1, PageID.4.)

"A prisoner's right to receive mail is protected by the First Amendment." *Knop v. Johnson*, 977 F.2d 996, 1012 (6th Cir. 1992) (citing *Pell v. Procunier*, 417 U.S. 817, 822 (1974)). "Mail is one medium of free speech, and the right to send and receive mail exists under the First

10

Amendment."  *Al-Amin v. Smith*, 511 F.3d 1317, 1333 (11th Cir. 2008) (citing *City of Cincinnati v. Discovery Network, Inc.*, 501 U.S. 410, 427 (1993)) ("[T]he use of the mails is as much a part of free speech as the right to use our tongues." (internal quotation marks omitted)).  A prisoner, however, retains only those First Amendment freedoms which are "not inconsistent with his status as a prisoner or with legitimate penological objectives of the corrections system[ ]."  *Martin v. Kelley*, 803 F.2d 236, 240 n.7 (6th Cir. 1986) (*quoting Pell v. Procunier*, 417 U.S. 817, 822 (1974); *see Turner v. Safley*, 482 U.S. 78 (1987).  It is well established that "[l]awful incarceration brings about the necessary withdrawal or limitation of many privileges and rights, a retraction justified by the considerations underlying our penal system."  *Price v. Johnston*, 334 U.S. 266, 285 (1948).  The limitations on the exercise of constitutional rights arise both from the fact of incarceration and from valid penological objectives-including deterrence of crime, rehabilitation of prisoners, and institutional security.  *O'Lone v. Estate of Shabazz*, 482 U.S. 342, 348 (1987) (*citing Pell*, 417 U.S. at 822–823; *Procunier v. Martinez*, 416 U.S. 396, 412 (1974)).

Incoming mail has long been recognized to pose a greater threat to prison order and security than outgoing mail.  *Thornburgh v. Abbott*, 490 U.S. 401 (1989); *Turner*, 482 U.S. at 78. And the possibility that incoming mail might introduce contraband into the prison is so obvious that courts have routinely upheld the right of prison officials to inspect incoming mail for contraband despite First Amendment free speech protection.  *See, e.g.*, *Wolff v. McDonnell*, 418 U.S. 539, 574–76 (1974).  For the same reason, inspections of incoming mail do not violate the Fourth Amendment.  *See, e.g.*, *Hudson*, 468 U.S. at 526 ("[T]he Fourth Amendment proscription against unreasonable searches does not apply within the confines of the prison cell.").  This Court has concluded that the reasoning in *Hudson* applies to a prisoner's incoming mail.  *Hubbard v. Mann*, No. 2:21-cv-55, 2021 WL 2845099, at *9 (W.D. Mich. July 8, 2021).

11

Plaintiff alleges that the mail at issue here was "legal mail."  Accordingly, there may be additional layers of constitutional protection.  In *Sallier v. Brooks*, 343 F.3d 868, 873–74 (6th Cir. 2003), the Sixth Circuit Court of Appeals considered multiple potential sources of protection for legal mail, including the Sixth Amendment right to counsel, the First Amendment right to petition for redress of grievances, the First Amendment right of access to the courts, and the prisoner's general interest in protecting the attorney-client privilege.  Simply calling a particular correspondence "legal mail," however, does not implicate each and every one of those protections.  For example, the Sixth Amendment right to counsel applies only to criminal prosecutions.  *Wolff*, 418 U.S. at 576–77 ("As to the Sixth Amendment, its reach is only to protect the attorney-client relations in the criminal setting . . . ."); *see also Stanley v. Vining*, 602 F.3d 767, 770 (6th Cir. 2010).  Plaintiff's complaint, however, is devoid of any facts supporting an inference that the legal mail in question related to a criminal proceeding such that the Sixth Amendment would be implicated.

The First Amendment right of access to the courts is also limited.  It applies only to certain types of court proceedings: "a prisoner's right to access the courts extends to direct appeals, habeas corpus applications, and civil rights claims only." *Thaddeus-X v. Blatter*, 175 F.3d 378, 391 (6th Cir. 1999) (en banc).  Plaintiff does not allege that he was prohibited from pursuing a direct appeal of his criminal convictions, a habeas corpus application, or a civil rights claim.  Moreover, nothing in Plaintiff's complaint suggests that the mail and work related to petitioning the government for redress of grievances.

The Eighth Amendment is only concerned with "deprivations of essential food, medical care, or sanitation" or "other conditions intolerable for prison confinement."  *Rhodes v. Chapman*, 452 U.S. 337, 34 (1981) (citation omitted).  Plaintiff's allegations regarding his legal

mail fall well short of meeting the objective prong of the Eighth Amendment standard. *See Carlton v. Jondreau*, 76 F. App'x 642, 643 (6th Cir. 2003).

Moreover, Plaintiff's claims fail to implicate the protections afforded to confidential communications between attorney and client. The Sixth Circuit has found "that the prisoner's interest in unimpaired, confidential communication with an attorney is an integral component of the judicial process and, therefore, that as a matter of law, mail from an attorney implicated a prisoner's protected legal mail rights." *Sallier*, 343 F.3d at 877. Plaintiff's complaint, however, is devoid of facts suggesting that the legal mail in question was from any attorney. *See Kensu v. Haigh*, 87 F.3d 172, 174 (6th Cir. 1996) (defining "'legal mail' to include delivery of a legal materials to a prisoner, ***properly and clearly marked as legal materials*** . . . .") (emphasis added); *Longmire v. Mich. Dep't of Corr.*, 454 F.Supp.3d 702, 708 (W.D. Mich. 2020) *aff'd* No. 20-1389, 2021 WL 5352809, at *2 (6th Cir. Jun. 9, 2021) ("[T]he mail must be 'properly and clearly marked as legal materials.' . . . . [W]hile the envelope states that it is confidential, it was not, as the district court held, 'clearly marked as legal mail,' nor did it have the Commission's name on it or other salient information, such as 'the name and bar number of a licensed attorney.'").

In sum, Plaintiff's allegations fall far short of setting forth a plausible constitutional claim related to the alleged interference with his legal mail and work on August 16, 2021. The Court, therefore, will dismiss all of Plaintiff's claims related to his legal mail.

## F.    Eighth Amendment Claims Regarding Medical Care

A liberal construction of Plaintiff's complaint suggests that he is raising Eighth Amendment claims regarding medical care he received (or did not receive) at ICF. For example, Plaintiff asserts that he submitted a healthcare kite on August 5, 2021, regarding a spider bite he received on August 1, 2021. (ECF No. 1, PageID.5.) In the kite, Plaintiff also explained that he had been suffering from a stuffy nose and sore throat in his cell. (*Id.*) Plaintiff claims he was not

seen until August 13, 2021, and by that time, the spider bite was gone. (*Id.*) Medical told him that there was nothing they could have done for the spider bite and did not address his "complaints of sore throats, stuffy nose, vomiting, and loss of appetite." (*Id.*) Plaintiff also suggests violations of his Eighth Amendment rights when he was not provided medical attention and mental health care for his complaints about neck and back pain, as well as dreams of being chained to the metal brackets, bolts, and eye hooks and tortured by ICF staff. (*Id.*, PageID.6.)

The Eighth Amendment obligates prison authorities to provide medical care, including medically necessary mental health care, to incarcerated individuals, as a failure to provide such care would be inconsistent with contemporary standards of decency. *Estelle v. Gamble*, 429 U.S. 97, 103–04 (1976). The Eighth Amendment is violated when a prison official is deliberately indifferent to the serious medical needs of a prisoner. *Id.* at 104–05; *Comstock v. McCrary*, 273 F.3d 693, 702 (6th Cir. 2001).

Deliberate indifference may be manifested by a doctor's failure to respond to the medical needs of a prisoner, or by "prison guards in intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed. Regardless of how evidenced, deliberate indifference to a prisoner's serious illness or injury states a cause of action under § 1983." *Estelle*, 429 U.S. at 104–05.

A claim for the deprivation of adequate medical care has an objective and a subjective component. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). To satisfy the objective component, the plaintiff must allege that the medical need at issue is sufficiently serious. *Id.* In other words, the inmate must show that he is incarcerated under conditions posing a substantial risk of serious harm. *Id.* The objective component of the adequate medical care test is satisfied "[w]here the seriousness of a prisoner's need[] for medical care is obvious even to a lay person."

14

*Blackmore v. Kalamazoo Cnty.*, 390 F.3d 890, 899 (6th Cir. 2004); *see also Phillips v. Roane Cnty.*, 534 F.3d 531, 539–40 (6th Cir. 2008). Obviousness, however, is not strictly limited to what is detectable to the eye. Even if the layman cannot see the medical need, a condition may be obviously medically serious where a layman, if informed of the true medical situation, would deem the need for medical attention clear. *See, e.g.*, *Rouster v. Saginaw Cnty.*, 749 F.3d 437, 446–51 (6th Cir. 2014) (holding that a prisoner who died from a perforated duodenum exhibited an "objectively serious need for medical treatment," even though his symptoms appeared to the medical staff at the time to be consistent with alcohol withdrawal); *Johnson v. Karnes*, 398 F.3d 868, 874 (6th Cir. 2005) (holding that prisoner's severed tendon was a "quite obvious" medical need, since "any lay person would realize to be serious," even though the condition was not visually obvious). If the plaintiff's claim, however, is based on "the prison's failure to treat a condition adequately, or where the prisoner's affliction is seemingly minor or non-obvious," *Blackmore*, 390 F.3d at 898, the plaintiff must "place verifying medical evidence in the record to establish the detrimental effect of the delay in medical treatment," *Napier v. Madison Cnty.*, 238 F.3d 739, 742 (6th Cir. 2001) (internal quotation marks omitted).

The subjective component requires an inmate to show that prison officials have "a sufficiently culpable state of mind" in denying medical care. *Brown v. Bargery*, 207 F.3d 863, 867 (6th Cir. 2000). Deliberate indifference "entails something more than mere negligence," but can be "satisfied by something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result." *Farmer*, 511 U.S. at 835. "[T]he official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* at 837. To prove a defendant's subjective knowledge, "[a] plaintiff may rely on circumstantial evidence . . . : A jury is entitled to 'conclude

15

that a prison official knew of a substantial risk from the very fact that the risk was obvious.'"

*Rhinehart v. Scutt*, 894 F.3d 721, 738 (6th Cir. 2018) (quoting *Farmer*, 511 U.S. at 842)).

However, not every claim by a prisoner that he has received inadequate medical treatment states a violation of the Eighth Amendment.  *Estelle*, 429 U.S. at 105.  As the Supreme Court explained:

> [A]n inadvertent failure to provide adequate medical care cannot be said to constitute an unnecessary and wanton infliction of pain or to be repugnant to the conscience of mankind.  Thus, a complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment.  Medical malpractice does not become a constitutional violation merely because the victim is a prisoner.  In order to state a cognizable claim, a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs.

*Id.* at 105–06 (internal quotation marks omitted).  Thus, differences in judgment between an inmate and prison medical personnel regarding the appropriate medical diagnoses or treatment are not enough to state a deliberate indifference claim.  *Darrah v. Krisher*, 865 F.3d 361, 372 (6th Cir. 2017); *Briggs v. Westcomb*, 801 F. App'x 956, 959 (6th Cir. 2020); *Mitchell v. Hininger*, 553 F. App'x 602, 605 (6th Cir. 2014).  This is so even if the misdiagnosis results in an inadequate course of treatment and considerable suffering.  *Gabehart v. Chapleau*, No. 96-5050, 1997 WL 160322, at *2 (6th Cir. Apr. 4, 1997).

The Sixth Circuit distinguishes "between cases where the complaint alleges a complete denial of medical care and those cases where the claim is that a prisoner received inadequate medical treatment."  *Westlake v. Lucas*, 537 F.2d 857, 860 n.5 (6th Cir. 1976).  If "a prisoner has received some medical attention and the dispute is over the adequacy of the treatment, federal courts are generally reluctant to second guess medical judgments and to constitutionalize claims which sound in state tort law."  *Id.*; *see also Rouster*, 749 F.3d at 448; *Perez v. Oakland Cnty.*, 466 F.3d 416, 434 (6th Cir. 2006); *Kellerman v. Simpson*, 258 F. App'x 720, 727 (6th Cir.

16

2007); *McFarland v. Austin*, 196 F. App'x 410 (6th Cir. 2006); *Edmonds v. Horton*, 113 F. App'x 62, 65 (6th Cir. 2004); *Brock v. Crall*, 8 F. App'x 439, 440–41 (6th Cir. 2001); *Berryman v. Rieger*, 150 F.3d 561, 566 (6th Cir. 1998).  "Where the claimant received treatment for his condition, as here, he must show that his treatment was 'so woefully inadequate as to amount to no treatment at all.'"  *Mitchell*, 553 F. App'x at 605 (quoting *Alspaugh v. McConnell*, 643 F.3d 162, 169 (6th Cir. 2011)).  He must demonstrate that the care he received was "so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness."  *See Miller v. Calhoun Cnty.*, 408 F.3d 803, 819 (6th Cir. 2005) (quoting *Waldrop v. Evans*, 871 F.2d 1030, 1033 (11th Cir. 1989)).

      Nothing in Plaintiff's complaint leads the Court to a reasonable inference that any of the named Defendants were personally involved in the provision of or denial of medical care to Plaintiff.  Administrative or custody officials who have no training or authority to supervise healthcare officials cannot be held liable for those officials' inadequate care.  *See Winkler v. Madison Cnty.*, 893 F.3d 877, 895 (6th Cir. 2018) (concluding that custody officer was entitled to rely on medical provider's judgment); *Smith v. Cnty. of Lenawee*, 505 F. App'x 526, 532 (6th Cir. 2012) ("[I]f a prisoner is under the care of medical experts . . . a non-medical prison official will generally be justified in believing that the prisoner is in capable hands." (quoting *Spruill v. Gillis*, 372 F.3d 218, 236 (3d Cir. 2004))); *see also Newberry v. Melton*, 726 F. App'x 290, 296–97 (6th Cir. 2018) (same); *Cuco v. Fed. Med. Ctr.-Lexington*, No. 05-CV-232-KSF, 2006 WL 1635668, at *21–22 (E.D. Ky. June 9, 2006) (holding that prison administrative officials were not liable for overseeing and second-guessing care given by medical officials) (citing *Birrell v. Brown*, 867 F.2d 956, 959 (6th Cir. 1989)).

Moreover, Plaintiff has provided no facts alleging that his various ailments constituted serious medical needs and that he suffered anything other than minor discomfort. Indeed, Plaintiff himself indicates that the spider bite went away and "his worries about it [were] gone." (ECF No. 1, PageID.5.)  Additionally, medical advised Plaintiff to buy pain relievers from commissary and do rotation and stretching exercises to alleviate his back and neck pain. (*Id.*, PageID.6.)  Mental health advised him to perform breathing exercises. (*Id.*)  Finally, Plaintiff fails to suggest that he suffered any severe long-term effects from the stuffy nose, sore throat, vomiting, and loss of appetite that he vaguely alleges.  In sum, nothing in Plaintiff's complaint would permit the Court to infer that Defendants were deliberately indifferent to a serious medical need. Plaintiff's Eighth Amendment claims premised upon medical care or the lack thereof will, therefore, be dismissed.

### G.      Eighth Amendment Claims Regarding Conditions of Confinement

The Eighth Amendment imposes a constitutional limitation on the power of the states to punish those convicted of crimes.  Punishment may not be "barbarous," nor may it contravene society's "evolving standards of decency." *Rhodes*, 452 U.S. at 345–46.  The Amendment, therefore, prohibits conduct by prison officials that involves the "unnecessary and wanton infliction of pain." *Ivey v. Wilson*, 832 F.2d 950, 954 (6th Cir. 1987) (per curiam) (quoting *Rhodes*, 452 U.S. at 346).  The deprivation alleged must result in the denial of the "minimal civilized measure of life's necessities." *Rhodes*, 452 U.S. at 347; *see also Wilson v. Yaklich*, 148 F.3d 596, 600–01 (6th Cir. 1998).  The Eighth Amendment is only concerned with "deprivations of essential food, medical care, or sanitation" or "other conditions intolerable for prison confinement." *Rhodes*, 452 U.S. at 348 (citation omitted).  Moreover, "[n]ot every unpleasant experience a prisoner might endure while incarcerated constitutes cruel and unusual punishment within the meaning of the Eighth Amendment." *Ivey*, 832 F.2d at 954.  "Routine discomfort is

'part of the penalty that criminal offenders pay for their offenses against society.'" *Hudson v. McMillian*, 503 U.S. 1, 9 (1992) (quoting *Rhodes*, 452 U.S. at 347).  As a consequence, "extreme deprivations are required to make out a conditions-of-confinement claim." *Id.*

In order for a prisoner to prevail on an Eighth Amendment claim, he must show that he faced a sufficiently serious risk to his health or safety and that the defendant official acted with "'deliberate indifference' to [his] health or safety." *Mingus v. Butler*, 591 F.3d 474, 479–80 (6th Cir. 2010) (citing *Farmer*, 511 U.S. at 834) (applying deliberate indifference standard to medical claims); *see also Helling v. McKinney*, 509 U.S. 25, 35 (1993) (applying deliberate indifference standard to conditions of confinement claims).  The deliberate-indifference standard includes both objective and subjective components. *Farmer*, 511 U.S. at 834; *Helling*, 509 U.S. at 35–37.  To satisfy the objective prong, an inmate must show "that he is incarcerated under conditions posing a substantial risk of serious harm." *Farmer*, 511 U.S. at 834.  Under the subjective prong, an official must "know[] of and disregard[] an excessive risk to inmate health or safety." *Id.* at 837.  "[I]t is enough that the official acted or failed to act despite his knowledge of a substantial risk of serious harm." *Id.* at 842.  "It is, indeed, fair to say that acting or failing to act with deliberate indifference to a substantial risk of serious harm to a prisoner is the equivalent of recklessly disregarding that risk." *Id.* at 836.  "[P]rison officials who actually knew of a substantial risk to inmate health or safety may be found free from liability if they responded reasonably to the risk, even if the harm ultimately was not averted." *Id.* at 844.

### 1.    Cleanliness of Plaintiff's Cell

Plaintiff suggests that his Eighth Amendment rights have been violated because he "has not been issued cleaning materials or equipment to clean his living area." (ECF No. 1, PageID.4.)  He avers that, instead, "against policy," staff allow inmate porters to enter and clean his cell. (*Id.*)  Plaintiff "feels that these prisoners have not and are not putting forth the same effort

19

he would to clean his living area." (*Id.*, PageID.5.)  He claims that there are "decades of filth, bodily fluids[,] and other unknown possible biohazardous stains on the walls, floors[,] and the slot attached to the door." (*Id.*)  Plaintiff asserts that the conditions attract insects, which subsequently attract spiders. (*Id.*)

While Plaintiff claims that he was not provided appropriate cleaning supplies, his complaint fails to plausibly assert that he was forced to live in inhumane conditions.  *Cf. Taylor v. Riojas*, 141 S. Ct. 52, 53 (2020) (concluding that a prisoner who alleged that he was placed in "shockingly unsanitary" cells for six days, one of which was covered in "massive amounts" of feces and the other of which was equipped with only a clogged drain to dispose of bodily waste, stated a violation of the Eighth Amendment); *Taylor v. Larson*, 505 F. App'x 475, 477 (6th Cir. 2012) (concluding that a prisoner who alleged that he was forced to remain in a cell covered in fecal matter for three days stated a claim under the Eighth Amendment).  Moreover, Plaintiff's complaints about insects in his cell fall short of demonstrating "conditions intolerable for prison confinement."  *See Rhodes*, 452 U.S. at 348; *see also Brooks v. Daniels*, No. 3:12CV-P446-S, 2012 WL 3866453, at *2 (W.D. Ky. Nov. 1, 2012) ("While unpleasant, the alleged conditions of having insects in a cell is not below the constitutional standard of the minimal civilized measures of life's necessities." (internal quotation marks omitted)); *Mitchell v. Dodrill*, 696 F. Supp. 2d 454, 467 (M.D. Pa. 2010) (concluding that a prisoner's allegation that his cell was "infested with 'cockroaches, spiders, worms, [g]nats, mice and other unknown insects'" fell short of demonstrating the existence of a substantial risk of serious harm).  Plaintiff's Eighth Amendment claims regarding conditions within his cell will, therefore, be dismissed.

### 2. Issues with Metal Bed Frame

Plaintiff suggests that it is cruel and unusual punishment to be subjected to the metal brackets, bolts, and eye hooks attached to every bed in his housing unit.  (ECF No. 1, PageID.5.)

20

Apparently, the brackets, bolts, and hooks are used to facilitate the use of restraints because Plaintiff indicates he is afraid of being chained to them.  (*Id.*, PageID.6.)  Plaintiff notes that the metal brackets, bolts, and eye hooks "are not even being used."  (*Id.*)  Plaintiff avers that these objects "disrupt his sleep and cause neck and back pain."  (*Id.*)

Nothing in Plaintiff's complaint, however, allows the Court to infer that any of these Defendants have been deliberately indifferent to a serious risk of harm by using these bed frames.  First, as noted above, the complaint does not indicate that any of these Defendants were even aware that the beds posed a risk of harm to Plaintiff.  Plaintiff handed a kite to a counselor regarding the issue and communicated with healthcare personnel regarding the issue, but there are no facts alleged to support the inference that these Defendants were aware of the issue.  Second, even if they were aware of the issue, it is not at all clear that an uncomfortable bed is anything more than a "routine discomfort."  *See Alfred v. Bryant*, 378 F. App'x 977, 980 (11th Cir. 2010) ("Objectively speaking, sleeping on a steel bed without a mattress for eighteen days, though uncomfortable, is not so extreme as to violate contemporary standards of decency."); *Brooks v. Cnty. of Macomb*, No. 13-cv-15082, 2015 WL 4430190, at *9 (E.D. Mich. July 20, 2015) (concluding that the prisoner did "not establish that a jail official knew of or disregarded an excessive risk to her health and safety" by providing "low-set steel bed frames").  Plaintiff's Eighth Amendment claims regarding the bed frame will, therefore, be dismissed.

### 3.    Lack of Out-of-Cell Exercise Time

Plaintiff also suggests that his Eighth Amendment rights have been violated because he has been denied his out-of-cell exercise time on multiple occasions.  (ECF No. 1, PageID.6.)  It is well established that "total or near-total deprivation of exercise or recreational opportunity, without penological justification, violates Eighth Amendment guarantees."  *Rodgers v. Jabe*, 43 F.3d 1082, 1086 (6th Cir. 1995) (quoting *Patterson v. Mintzes*, 717 F.2d 284, 289

(6th Cir. 1983)).  But, once again, nothing in Plaintiff's complaint suggests that Defendants were personally involved in the alleged deprivation of out-of-cell exercise time.  Moreover, Plaintiff alleges only that "he receives no fresh air from the filth of his cell."  (ECF No. 1, PageID.6.) Nothing in Plaintiff's complaint suggests that his cell was too small to permit any exercise or that he suffered from any ill effects from the limitation on his yard privileges.  Plaintiff's Eighth Amendment claims regarding the denial of out-of-cell exercise time against these Defendants will, therefore, be dismissed.

### H.      Fourteenth Amendment Equal Protection Claim

Plaintiff also suggests that staff at ICF allow other inmates on his unit to have their out-of-cell exercise time but deny him the same opportunity.  (ECF No. 1, PageID.6.)  The Court's reading of Plaintiff's complaint leads to a conclusion that Plaintiff is attempting to assert a Fourteenth Amendment equal protection claim.

The Equal Protection Clause of the Fourteenth Amendment provides that a state may not "deny to any person within its jurisdiction the equal protection of the laws[,]" which is essentially a direction that all persons similarly situated should be treated alike.  U.S. Const. amend. XIV; *City of Cleburne v. Cleburne Living Ctr., Inc.*, 473 U.S. 432, 439 (1985).  Because the crux of an equal protection violation is the treatment of similarly situated people differently, "[a] plaintiff bringing an equal protection claim must be 'similarly situated' to a comparator in 'all relevant aspects.'"  *Tree of Life Christian Schools v. City of Upper Arlington*, 905 F.3d 357, 368 (6th Cir. 2018) (quoting *Paterek v. Vill. of Armada*, 801 F.3d 630, 650 (6th Cir. 2015)).  In other words, "the comparative [person] 'must have dealt with the same [decisionmaker], have been subject to the same standards, and have engaged in the same conduct without such differentiating or mitigating circumstances that would distinguish their conduct or the [decision-maker's] treatment of them for it.'"  *Umani v. Mich. Dep't of Corr.*, 432 F. App'x 453, 460 (6th Cir. 2011)

22

(quoting *Ercegovich v. Goodyear Tire & Rubber Co.*, 154 F.3d 344, 352 (6th Cir. 1998)). Plaintiff's allegations do not plausibly suggest that he and the other inmates in his unit were similarly situated in all relevant respects. Plaintiff asserts that he was often told that he could not have out-of-cell recreation because he was in segregation or on LOP status; he fails to allege any facts suggesting that the inmates who were permitted out-of-cell recreation were also on LOP or segregation. Plaintiff's conclusory claim of an equal protection violation and mere suggestion of intentional discrimination does not suffice. *See Iqbal*, 556 U.S. at 678; *Twombly*, 550 U.S. at 555. Plaintiff's Fourteenth Amendment equal protection claim will, therefore, be dismissed.

### III. State Law Claims

Plaintiff asserts state law claims of negligence, intentional infliction of emotional distress, and "intentional interference with another's interest in solitude or seclusion" against Defendants. Claims under § 1983 can only be brought for "deprivations of rights secured by the Constitution and laws of the United States." *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 924 (1982). As noted *supra*, section 1983 does not provide redress for violations of state law. *Pyles*, 60 F.3d at 1215; *Sweeton*, 27 F.3d at 1166. Plaintiff's assertion that Defendants violated state law, therefore, fails to state a claim under § 1983.

Ordinarily, where a district court has exercised jurisdiction over a state-law claim solely by virtue of supplemental jurisdiction and the federal claims are dismissed prior to trial, the court will dismiss the remaining state-law claims. *See Experimental Holdings, Inc. v. Farris*, 503 F.3d 514, 521 (6th Cir. 2007) ("Generally, once a federal court has dismissed a plaintiff's federal law claim, it should not reach state law claims." (citing *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 726 (1966))); *see also Southard v. Newcomb Oil Co., LLC*, 7 F.4th 451, 455 (6th Cir. 2021) (recognizing that once a federal court no longer has federal claims to resolve, it "should not ordinarily reach the plaintiff's state-law claims" (quoting *Moon v. Harrison Piping Supply*, 465

F.3d 719, 728 (6th Cir. 2006))); *Landefeld v. Marion Gen. Hosp., Inc.*, 994 F.2d 1178, 1182 (6th Cir. 1993).  In determining whether to retain supplemental jurisdiction, "[a] district court should consider the interests of judicial economy and the avoidance of multiplicity of litigation and balance those interests against needlessly deciding state law issues." *Landefeld*, 994 F.2d at 1182; *see also Moon*, 465 F.3d at 728 ("Residual jurisdiction should be exercised only in cases where the interests of judicial economy and the avoidance of multiplicity of litigation outweigh our concern over needlessly deciding state law issues." (internal quotation marks omitted)).  Dismissal, however, remains "purely discretionary." *Carlsbad Tech., Inc. v. HIF Bio, Inc.*, 556 U.S. 635, 639 (2009) (citing 28 U.S.C. § 1367(c)); *Orton v. Johnny's Lunch Franchise, LLC*, 668 F.3d 843, 850 (6th Cir. 2012).  Here, in light of the Court's dismissal of the federal claims against Defendants, the balance of the relevant considerations weighs against the continued exercise of supplemental jurisdiction as to them.  Accordingly, Plaintiff's state law claims against Defendants will be dismissed without prejudice.

## Conclusion

Having conducted the review required by the Prison Litigation Reform Act, the Court determines that Plaintiff's federal claims will be dismissed for failure to state a claim, under 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c).  His state law claims will be dismissed without prejudice because the Court declines to exercise supplemental jurisdiction over such claims.

The Court must next decide whether an appeal of this action would be in good faith within the meaning of 28 U.S.C. § 1915(a)(3).  *See McGore v. Wrigglesworth*, 114 F.3d 601, 611 (6th Cir. 1997).  Although the Court concludes that Plaintiff's claims are properly dismissed, the Court does not conclude that any issue Plaintiff might raise on appeal would be frivolous. *Coppedge v. United States*, 369 U.S. 438, 445 (1962).  Accordingly, the Court does not certify that

an appeal would not be taken in good faith.  Should Plaintiff appeal this decision, the Court will

assess the $505.00 appellate filing fee pursuant to § 1915(b)(1), *see McGore*, 114 F.3d at 610–11,

unless Plaintiff is barred from proceeding *in forma pauperis*, *e.g.*, by the "three-strikes" rule of

§ 1915(g).  If he is barred, he will be required to pay the $505.00 appellate filing fee in one lump

sum.

      This is a dismissal as described by 28 U.S.C. § 1915(g).

      A judgment consistent with this opinion will be entered.


Dated:   __February 3, 2022_____              __/s/ Ray Kent_____
                                                Ray Kent
                                              United States Magistrate Judge